Thank you very much. I'm going to save three minutes for rebuttal, Your Honor, and I will try to keep track of my time. I'm going to start with the issues about defendant autonomy. That right has two aspects. First, there's the more general right to control the fundamental aspects of the defense that McCoy talked about. Second, there's the right, if it's the only way to do it, to represent yourself under Furetta. Mr. Gougher had some ideas about his defense that if you wanted to be polite, you'd call unorthodox. If you wanted to be impolite, you'd call it nonsensical. Judge Collins, Judge Collins, his argument is going in and out. I can't hear half of what he's saying. It's kind of getting every third word. Okay, I'm hearing the whole thing, but maybe we have a problem with the feed. Is it any better now, or are we still having the same problem? Same problem. I don't know if the I. Is it your Bluetooth connection? No, I have a headphone on because I've been told that speaking directly into the computer microphone is too low. I could pull the headphone and try that. Why don't you try that and see if that works better? All right. Is it any better at all? Let's see. All right. Can you speak and let's see if we can hear? All right, I'm speaking now. Can the court hear me? It's very faint. The volume isn't high. I'm fairly sure that my volume on the computer says it's at the max, so I think the headphone's the best I can do if I can put that back on. Okay, try it. And I'm now speaking into the microphone, but Judge Presnell, are you still having the same problem? Well, I can hear you better now. All right. Okay, try it and speak, you know, louder. I think it's not so much you're going in and out as that the base volume is low enough that if you modulate your voice, it disappears on some of the connections. I will try to do that. Okay. And if I can have a minute or so of my time back, then I'll let the court decide about that. Yes, let's reset the time back at 15 minutes. All right, why don't you try again now? Just to repeat in case Judge Presnell didn't quite hear what I was saying, I was talking about the right about defendant autonomy and that having two aspects. One of those is the defendant getting sort of to direct the fundamentals of his defense, and the second is if it comes down to that and he's willing to do it, he gets to represent himself. And that's the fundamental right that I think is most strongly at issue here, though there's obviously the other issues as well. The court gave, I would argue, two reasons. The government says three reasons for denying Mr. Gouger the right to represent himself. First, the court said he didn't understand the nature of the charges. Second, the court said he wouldn't comply with the rules of courtroom decorum. Third, the government says the court also made a finding that he was just doing this to delay the proceedings. I'm not so sure the court actually made that finding, but for purposes of argument, I'll assume it did. None of those rationales stand up in the circumstances of this case. On the not understanding the charges rationale, Your Honor, the problem is that denying self-representation is not the remedy for that. There are cases directly on point that say the remedy when a defendant doesn't understand the charges is for the court to give a better explanation or more of an explanation. Mr. Gouger, if I could interrupt you on that. It seems to me that, first of all, during all of these status conferences, his Faretta request, to the extent he was making one, was equivocal up until just before trial. At that point, the trial judge tried to explain the nature and the charges against him, and he basically just refused to accept the judge's attempt to educate him. How is a district judge supposed to make someone understand when they refuse to listen? Two points, Your Honor. First of all, I don't know what the court means by right up to trial, but I think he made his first unequivocal request on August 31st, which was three weeks before trial. But what the court should have done here, Your Honor, is a couple of things. First of all, I believe the record is actually quite clear that when Mr. Gouger was using the buzzwords the nature and the cause, he was not talking about Faretta talks when he says the nature of the charges. And the first district court actually basically recognized that. So I think on this record, the district court could have made a finding that Mr. Gouger did understand the nature of the charges in the sense of the elements of the offense. If the district court wasn't comfortable with that, I think what the district court could and should have done was a couple of things to try to further explain it. First of all, it could have stopped using the buzzwords nature of the charges. It could have just told Mr. Gouger the government will have to prove the following things. It could have used the buzzword elements, but it could have stayed away from the buzzword elements. It could have said the government will have to prove X, the government will have to prove Y, and the government will have to prove Z. And it could have broken those down into some of the same layperson language that's in the instructions. And he could have even said, I am going to tell the jury that it has to find X, and it has to find Y, and it has to find Z. That at least should have been tried. And if Mr. Gouger at that point still wouldn't say, yes, I understand, I think the district court could and should have found, no, you're an educated man, I had a competency evaluation done, so I know you're not mentally ill, and I believe you do understand, and I'm making a finding that you do. So at the very least, Your Honor, the court had to make that attempt, and I think after making that attempt, it could and should have made the finding. But going on to the second ground, I mean, hadn't there been, at this point, a long enough history of his difficult behavior where he wouldn't follow instructions, he talked over, the judge was rude to the judges, would not follow the orders that they gave him? Wasn't there enough of a record at this point that they didn't have to further try the experiment of seeing whether he would behave himself and follow the court rules? Your Honor, I would say to that, no, for two reasons. First of all, my position would be, and it's actually supported at least by one Ninth Circuit unpublished case that I cited in the reply brief called Waddle, is that you can't deny self-representation on courtroom decorum grounds until it's actually been tried and it doesn't work, and there's no courtroom decorum there. Second, there were good reasons here to try it. The main reason Mr. Gouger was being obstreperous, if we want to call it that, is that he was being saddled with an attorney he didn't want. And I think much of what he was complaining about would have gone away if he was allowed to represent himself, so that made it very important to try. Second of all, there's one wonderful illustration of how he acted at one point, at the August 31st hearing, which was the first hearing where he made an unequivocal request. The prosecutor, first of all, he answered many of the phoretic questions about his education, or lack thereof, about his lack of knowledge of the law, about whether anyone had threatened or forced him to do this, and so on. And then the judge had the prosecutor explain the elements. I believe this is around Excerpt of Record 32, 33, and there.  First he says, I object. The judge tells him you're not allowed to object. Then he says, a few sentences later, may I object? The judge says, no. And then he asks a couple sentences later, when can I object? And the judge says, you don't get to object here. But he was trying to figure out when he would be allowed to make his arguments and make his points. And that was another reason it was appropriate, or very inappropriate, to deny him the right to self-representation before he'd even had a chance to try it. So the answer to your question, Your Honor, is twofold. First of all, I think the rule should be, and this is what Wavle suggests, that you can never deny self-representation without first trying it based on the quorum to quorum ground. And second, if there's some exceptional circumstances where that might be appropriate, they weren't present here. Your Honor, the other ground that the government thinks the court relied on, but I'm not so sure the court did, is that the request was for purpose of delay. I think that can't be a basis for denying the self-representation unless and until there's a request for delay. Mr. Godger never asked for a continuance here. If he had started representing himself and or said, I'm only going to do this if I can have a continuance, the court could have said no. We're going to trial on September 19th. You can either do it yourself or I'll have the attorney do it, but we're not changing the date. Without Mr. Godger having made that request, there was no basis for making a finding or an argument that the request was for purpose of delay. I did want to touch on, since I have a little bit of time before I get to the three minutes I'm saving for rebuttal, I wanted to touch a little bit on some of the other issues. One that I think the court needs to look at carefully is the potential conflict of interest created by the filing of the bar complaint. There's a lot of cases out there that worry about whether or not defendants will do that, and any defendant who wants a new attorney can then get out of his attorney by filing a bar complaint. But you don't have to go that far, Your Honors, because I think the problem here, the initial problem, is there was no inquiry into the nature of the bar complaint. At least without knowing whether it was really a frivolous complaint or a meritorious complaint, the district court, there was no conflict. And the case law actually supports that when you look at it carefully. The Ninth Circuit Moore case, which wasn't about so much conflict, but it cited a couple conflict cases, talked about the concern about there not being an evidentiary hearing. And there's a Fourth Circuit case, there's a Fourth Circuit case called Burns that expresses this concern about defendants will use this as a way to just get an attorney whenever they want to. There's a later Fourth Circuit case that distinguishes that case based on the fact that the bar complaint appeared to be non-frivolous. Do you have any obligation to create a record as to prima facie what the complaint was about to show that further inquiry or hearing was warranted? Not when the district court had told them multiple times you don't get to say anything. I think that's the answer to that, Your Honor. Maybe if the court had allowed him under McCoy to have a little bit of participation so he could get his points out, maybe then he'd have an obligation. Of course, you're talking about an uneducated defendant who has no, I shouldn't say uneducated, he had a college degree but no training in the law. But not when the district court had been as crystal clear as it was that he wasn't going to be allowed to say anything and he wasn't going to be allowed to represent himself. So I think of the circumstances of this case, no. There is also the bail revocation hearing issue. At that point, Mr. Gottschall... Would the bail revocation issue have been appealable right away under the Bail Reform Act? I don't... Because normally detention orders are immediately appealable. How does something like that survive final judgment? It seems like the sort of thing that would have to go up then or... It's not a basis to set aside a judgment. It doesn't survive final judgment if the question is getting bailed. But it does survive final judgment if the question is that being a critical stage of the proceedings where he was deprived of his right to counsel and that being structural error, which are the three steps in that argument. That would have justified setting aside the order had that direct appeal been taken then. How does it factor in, feed into, tainting the subsequent judgment? It doesn't seem to have any impact on it. That's what I don't understand. Well, I think the problem is, and that's why it's structural error, is you can't tell how it affected the judgment. You can't tell how the fact that he was sitting in custody with the various problems he described, while he was in custody, affected things. So I think that goes to the structural error question, Your Honor. And that, of course, I've tried to address that in the brief. So I see I'm running short on my time. But I think that goes to the structural error. The problem is that it's just too hard to evaluate, I think. That's why it's structural error. Mr. Gunn, how can it be structural error when he had counsel at the revocation hearing, he just chose not to use his lawyer? Well, he basically chose to represent himself without a proper phoretic colloquy. That would be the violation of the right to counsel. If there had been a proper phoretic colloquy and he said, I want to represent myself, there would be no error. If there had been a proper phoretic colloquy and he didn't make an unequivocal request to represent himself, then the judge could and should have said, I'm not going to let you do it. I'm going to make the attorney argue instead of you. Well, I don't see that as structural. Basically, the district judge allowed a hybrid proceeding, and I see no abuse of discretion in that. But that's just my opinion. Well, and my argument, of course, is it wasn't hybrid, but that's something obviously the government has to argue differently. I see I'm down to two minutes and 20 seconds. I'll reserve unless the court has questions it wants me to answer now. Thank you, counsel. We'll hear now from Mr. Zipf. Good morning, and may it please the court, Daniel Zipf on behalf of the United States. Your Honor, starting with the bail revocation hearing, this defendant could have appealed from errors at that hearing immediately after the hearing under Stack v. Boyle. In fact, the district court gave him an opportunity to come back the following week with his new attorney and essentially re-argue why he should be released on bail. He never raised any of these issues at the time, and he never filed an appeal. So at this stage following conviction, even if there was some error in allowing hybrid representation, the remedy wouldn't be to overturn an otherwise valid conviction. But, of course, there was no error, or at least the district court was well within its wide discretion in handling the sort of difficult situation that the defendant created at this bail hearing. For four months leading up to this hearing, the defendant had steadfastly refused any appointed counsel. He had refused to retain his own counsel, and he had declined to represent himself. Under those difficult circumstances, the district court allowed him a role in the proceedings to get to the bottom of what the allegations were and whether he had violated the terms of his pretrial release. So there was no Sixth Amendment violation at that proceeding, and even if there was, reversal of conviction would not be a proper remedy at this point. As to the other Sixth Amendment claims relating to his request to represent himself at trial, the district court properly denied his request for three reasons. First, as Your Honor noted, the defendant refused to answer the questions about whether he understood the nature of the charges against him. He kept repeating almost like a mantra that he didn't understand the nature and cause of the charges, which was something he had been saying over and over again through three different Feretta hearings and at multiple hearings throughout. But even before that point, the first time that he made an unequivocal request to represent himself, as the court tried to go through the Feretta inquiries, he kept pushing back, kept giving qualified answers and non-responsive answers. The court had to stop and start over until he finally got to the point where he asked him, after listing the charges, do you understand the nature of the charges against you? And he asked it four times, and the defendant refused to answer. At that point, with the record as it was, the district court simply could not go forward and allow him to represent himself. If he did, then we would be presumably having the opposite conversation right now on appeal, in that the defendant made it clear that he did not understand the charges. And I think defense's point that the court had some sort of obligation to avoid using buzzwords or to phrase the way that he asked it differently is not supported by the record. There was three separate Feretta hearings. The first district court actually ordered the United States to prepare a bill of particulars that the defendant kept asking for. All of the courts repeatedly instructed the defendant on the specific elements. There's no case law that would suggest that the court then, when Feretta itself requires a finding as to that the defendant understands the nature of the charges against him, that the court couldn't use that language in order to sort of avoid inflaming an irrational defendant. But there was, as to the second point, the district court even had it concluded that the defendant really did understand the nature of the charges, would have still properly denied the right to self-representation, simply based on the defendant's conduct in the months leading up to and at the Feretta hearing itself. My opponent had cited the unpublished case of Walthall from this court issued earlier this year. But in that case, the court never even attempted to engage in a Feretta inquiry. The court sort of just took the defendant's antics and unreasonable behavior leading up to the hearing and then sort of out of the gate denied the right to self-representation. That's very different from the facts here where the defendant, even as the court was trying to conduct the Feretta inquiry, the defendant kept pushing back, interrupting. And in fact, at that hearing three weeks before trial, the defendant had to be removed from the courtroom immediately after the Feretta inquiry. He threatened to sue the district court judge after he denied him self-representation and had to be removed, which was the second time that it occurred. Previously at a competency hearing, he also had to be removed for failure to abide by the court's instructions. So given that the standard allows for denial of the self-representation, if a defendant refuses to abide by the rules and procedures and courtroom protocol, the court properly found that this defendant met that standard. And as my opponent noted, the court also properly denied this request purely based on the timing. Over the course of a year of pretrial litigation, the defendant made it very clear that his efforts in this regard were intended to sort of play off the right to self-representation against the right to retain an attorney of choice and use that to simply stop the trial from going forward. Up to the day of the trial itself, the defendant told the district court, we're at an impasse here. I don't understand the nature and cause of the charges. We can't go forward. So for that reason as well, the district court was properly denied his request. I'm happy to answer. There's a lot of other issues raised by the defendant. I'm happy to answer any questions the court had about other issues. I had a question about whether or not the striking of his testimony after he took the stand, leaving just the identification of his name, doesn't that bring this within the Grantello case from the Eighth Circuit, put it on all fours with that? Yes, Your Honor. I don't think that in this case either the district court or the defense attorney recognized that by taking the stand, testifying, but testifying in a way that was contrary to the law and resulted in your answers being stricken from the record, was the same as not testifying at all or invoking a Fifth Amendment right. In that Eighth Circuit case from 1923, I think the defendant took the stand and simply said his name and nothing more, and the court held that it was improper to then comment on that, on what he failed to say. I think in this case, because there was no objection from defense counsel and because we're only reviewing for plain error, given the manner that this unfolded at trial, it was not so plain or obvious that this particular fact pattern of a defendant testifying but doing it in a way that results in his testimony being stricken is the equivalent of invoking the Fifth Amendment right to remain silent or equivalent to that Eighth Circuit case of simply taking the stand but not saying anything. So to the extent they're similar, I think there's enough difference there that the court, it wasn't so plain or obvious that a competent district court would have been required to recognize this as a Fifth Amendment invocation. But even if it was a plain error on the part of the district court not to recognize this as a Fifth Amendment invocation, any error would have necessarily been harmless in this case. The prosecutor came back up after the defendant testified and asked a total of 10 questions. The defendant did not respond to any of the 10 questions from the prosecutor. All of those answers were stricken. The court then instructed the jury that the questions of counsel were not in evidence, and in closing argument, defense counsel, the first thing he said was to remind the jury that any questions the prosecutor asked were not in evidence. So even if it should have been plain to the court that after sort of warning the defense extensively that if he took the stand, he would be subject to cross-examination, that at that point, once he gave non-responsive answers, that the court should have stopped the prosecutor and not allowed any further questioning. Because the defendant never actually answered any of the questions, none of this would have affected the overall outcome of trial. And that's particularly true even if you take into account the fact that the prosecutor made a comment in rebuttal closing argument. This point about what the defendant said or did not say on the stand was one minor point in a case that was otherwise overwhelming and essentially uncontested. This is a defendant who had, the evidence showed, had downloaded over several hundred videos onto his computer over the course of a three-year period. The computer, his roommate testified that he was the only one that controlled the computer. There was items, resumes and photographs on the computer that contained the child pornography. And there was essentially no real dispute in this case that he was the user and operator of the computers where it was found. So even if there was an error on the part of the district court in these highly unusual circumstances, reversal of conviction on plain error review would not be appropriate in this case. You also addressed the discovery issue because they've contended that the en banc majority in Dreyer rested in declining to order suppression on expectations about changes and reforms that would be made. And they tried to make a showing to argue that there was reason to think that those had not been done and therefore perhaps the result from Dreyer should be different. Why was it appropriate in your view to close off that discovery? Sure, Your Honor. I think that it was well within the district court's discretion to decline this discovery request in this case for a few reasons. First, in Armstrong, the Supreme Court made it clear that Rule 16 provides for discovery as a defense to the actual case in chief brought against the defendant. In other words, as the court described it, to shield defenses against the evidence from the United States. But it does not open the path to broader sort of sword discovery to attack the prosecution or the way that the prosecution was brought. More particularly in United States v. Chaun cited in the brief, this court has already considered a request for information from the NCIS to support a passe comitatus defense and held that that's the type of sword discovery that is not covered by Rule 16. And even putting that aside, the particular investigation in this case took place in 2012, around the same time as the investigation in the Dreyer case. And this was years before the Ninth Circuit's original panel opinion or the en banc opinion. So for the court to order discovery in aid of a sword defense, to essentially argue that the Ninth Circuit was misled and conducted its analysis wrong, in order to sort of send a message by dismissing a case that occurred before any of these Ninth Circuit cases even came down, it's several steps removed from the sort of normal Rule 16 process. And certainly under an abuse of discretion standard, it wasn't illogical or irrational for the court to decline to go down that road and to keep this case focused on the actual facts at issue here. I'm happy to answer any other questions on any of the other issues. If not, we would submit. Thank you, Your Honors. Mr. Gunn, you may proceed. Thank you, Your Honor. I'm going to try to make three quick points in response. First of all, on this idea that Mr. Goucher was absolutely refusing to answer any questions, I'd like to refer the court to excerpt of record, page 25, and going on from there. Question number one, are you requesting to represent yourself, yes or no? Yes, sir. And then the court says, well, before you didn't understand the nature of the charges. And he says, that's because the prosecutor didn't answer my bill of particulars correctly, clearly focusing on someone else. Then go on to the next page, excerpt of 26. A whole litany of questions that he goes ahead and answers. The only sticking point came when there was this pretty obviously different interpretation of nature and cause. So I think this is far different from some of the cases the government cites where the defendant wouldn't answer any questions at all. On the cross-examination, Your Honor, I wanted to note two things. First of all, there was an objection at the time of the jury instructions and an objection to the closing argument. I note that in the appellant's opening brief at page 46. So I think there was a sufficient objection here to make it not plain error review. Also, this is not a case, unlike some child pornography cases perhaps, where the evidence was overwhelming. This was a computer that at least three other people had access to. Mr. Goucher's wife, Mr. Goucher's son who lived there some of the time, and the roommate who claimed, of course, that he never used it. But the jury didn't have to accept that, and the roommate had a little bit of baggage that got revealed at cross. This was not an overwhelming case. On the discovery issue, Your Honor, the government mentions a couple of things. Armstrong does not draw this sword-shield analogy as interpreted by the Ninth Circuit. I talk about, I believe it's the Sotomayor Zuniga case in my reply brief that adopts Judge Ginberg's understanding of the limitation of Armstrong to selective prosecution cases. Chone is different because remember the whole argument here is that Dreyer is undercut because it was part of Dreyer's rationale for not applying the exclusionary rule to a PCA violation. Chone didn't have that issue before it because in Chone the court found there was no PCA violation. So Chone didn't have any issue whether the exclusionary rule applied, which was what the problem was, which was why Dreyer used that representation in its case. I think I've gone 20 seconds over, so unless the court has questions, I'll submit. All right. Thank you, counsel. The case just argued is submitted. We thank both counsel for the very helpful presentations this morning, especially under these unusual circumstances.
judges: Collins, Lee, Presnell